**FILED**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

AUG 1 6 2005

U. S. DISTRICT COURT
E. DIST. OF MO.
ST. LOUIS

GENO TECHNOLOGY, INC., )
                     )
    Plaintiff, )   **4** ) **05CV0 1 9 7 7 D N**
                     )
    v. )    Civil Action No.
                     )
INVITROGEN CORPORATION, )   **JURY TRIAL DEMANDED**
                     )
    Defendant. )
                     )

## COMPLAINT

Comes now Plaintiff Geno Technology, Inc. ("GenoTech"), through its undersigned

counsel, and for its Complaint against defendant Invitrogen Corporation ("Invitrogen") states as

follows:

### PARTIES

1.     GenoTech is a corporation duly organized and existing under the laws of the State

of Missouri, and has its principal place of business at 92 Weldon Parkway, Maryland Heights,

Missouri, 63043.

2.     GenoTech is the owner of all right, title and interest in the trademark

"RNaseOUT." GenoTech has actively promoted and sold a product that is used in laboratories

under its trademark RNaseOUT, and has used the trademark in interstate commerce, since at

least September 1996.

3.     Upon information and belief, Defendant Invitrogen Corporation ("Invitrogen") is

a corporation organized and existing under the laws of the State of Delaware, and has its

principal place of business at 1600 Faraday Avenue, Carlsbad, California, 92008. Invitrogen has

used the mark RNaseOUT on products sold throughout the United States including Missouri, without any authorization from GenoTech to use such mark.

## JURISDICTION AND VENUE

4.     This action for unfair competition is based on § 43(a) of the Lanham Act, as amended, 15 U.S.C. §1125(a). This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121; 28 U.S.C. § 1331; and 28 U.S.C. §§ 1338 (a) and (b) and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5.     Upon information and belief, Invitrogen transacts business within this judicial district and has committed a tortious act within the district within the meaning of Mo. Rev. Stat. § 506.500 and is therefore subject to the personal jurisdiction of this court.

6.     Venue in this district is proper pursuant to 28 U.S.C. §§ 1391 (b) and (c).

## BACKGROUND

7.     GenoTech was incorporated in 1994 and is a leading manufacturer of cleaning and decontaminating agents for laboratory use.

8.     GenoTech has actively promoted and sold one such cleaning and decontaminating agent under the trademark RNaseOut, and has used the mark in interstate commerce, since at least September 1996.

9.     GenoTech has expended substantial resources in advertising and promoting the RNaseOUT trademark.

10.     On or about October 22, 1997, GenoTech received a cease-and-desist letter from Stuart P. Hepburn ("Hepburn"), Director, Corporate Development, for Life Technologies Incorporated ("LTI") claiming exclusive rights in the RNaseOUT trademark in connection with an "RNase inhibitor," and demanding that GenoTech discontinue all use of such mark.

11.    On or about October 27, 1997, the Director Technology for GenoTech, Dr. Aftab Alam ("Alam"), sent a reply letter to LTI requesting proof of LTI's claimed use of the RNaseOUT trademark.

12.    On or about October 31, 1997, Alam and Hepburn had a telephone conversation wherein Alam advised Hepburn that GenoTech had begun using the RNaseOUT trademark before LTI and had superior rights in the trademark.

13.    During the October 31, 1997 telephone conversation, Hepburn, on behalf of LTI, offered to purchase GenoTech's rights in the RNaseOUT trademark for five thousand dollars.

14.    On or about November 3, 1997, Alam received a facsimile from Hepburn memorializing the offer made during the October 31, 1997 telephone conversation.

15.    Alam contacted Hepburn by telephone and rejected LTI's offer to purchase GenoTech's rights in the RNaseOUT trademark. The parties agreed that LTI would cease all use of the RNaseOUT trademark in light of GenoTech's superior rights to the mark.

16.    Based upon Hepburn's promises and representations, GenoTech, in good faith, believed that the matter had been resolved and that LTI had discontinued all use of the RNaseOUT trademark.

17.    Upon information and belief, Invitrogen purchased LTI and all of its product lines in the year 2000.

18.    GenoTech has recently become aware that Invitrogen has continued the use, or resurrected the use, of the RNaseOUT trademark in connection with a recombinant ribonuclease inhibitor.

19.    Invitrogen is selling its RNaseOUT product in the same channels of trade as GenoTech's RNaseOUT product.

20.     Invitrogen is not, and has never been, authorized by GenoTech, and is not and has never been entitled, to use the RNaseOUT mark in connection with any business or service.

## COUNT I

### (Federal Unfair Competition and False Designation of Origin)

### [15 U.S.C. § 1125(a)]

21.     GenoTech repeats and realleges paragraphs 1 through 20 as if fully stated herein.

22.     Invitrogen's use of the RNaseOUT mark, without authority or license from GenoTech, on products sold to laboratories throughout the United States and in advertisements, including advertisements on the internet, constitutes unfair competition and a false designation of origin that is likely to deceive customers and prospective customers into believing that Invitrogen's products are those of GenoTech.

23.     On information and belief, Invitrogen sells such products and publishes such advertisements with knowledge and conscious disregard of GenoTech's rights.

24.     Invitrogen's acts are likely to cause confusion or mistake among the public as to the true origin and sponsorship of Invitrogen's laboratory products, and to confuse the public into believing that Invitrogen's products have the approval of GenoTech, in violation of section 43(a) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1125(a). As a result of the foregoing, GenoTech has no adequate remedy at law.

## COUNT II

### (State Statutory Trademark Dilution)

### [Mo. Rev. Stat. § 417.061(1)]

25.     GenoTech repeats and realleges paragraphs 1 through 24 as if fully stated herein.

26.     This claim arises under Missouri Revised Statutes Section 417.061(1).

27.     GenoTech is the owner of the "RNaseOUT" mark at common law.

28.     Based on GenoTech's extensive sales, marketing and advertising of its products
bearing the RNaseOUT mark, the RNaseOUT mark has become distinctive.

29.     Invitrogen's use of the RNaseOUT mark in connection with a closely related
product line is eroding the distinctiveness of the RNaseOUT mark.

30.     Invitrogen's actions have caused dilution of GenoTech's RNaseOUT mark by
lessening the capacity of the mark to identify and distinguish GenoTech's products.

31.     GenoTech is threatened with injury through this dilution of its trademark rights,
as well as immediate and direct injury to its name, image and business reputation.

32.     Invitrogen has willfully intended to trade on GenoTech's reputation and/or to
cause dilution to GenoTech's mark.

33.     GenoTech has no adequate remedy at law. The conduct of Invitrogen has caused,
and if not enjoined will continue to cause, irreparable damage to GenoTech's rights in and to its
trademark, and to GenoTech's business, reputation, and goodwill.

## COUNT III

### (State Common Law Action for Trademark Infringement and Unfair Competition)

34.     GenoTech repeats and realleges paragraphs 1 through 33 as if fully stated herein.

35.     This claim arises under the common law of this State relating to trademark
infringement and unfair competition.

36.     GenoTech is the owner of all rights, title and interest in and to the RNaseOUT
mark by virtue of its manufacture and sale of products bearing such trademark as set forth in the
preceding paragraphs of this Complaint.

37.     The unauthorized use by Invitrogen of GenoTech's common law trademark constitutes trademark infringement and unfair competition, and is likely to cause confusion and mistake in the minds of the trade and the purchasing public as to the source of the products, and to cause purchasers to believe such products are products of GenoTech when, in fact, they are not.

38.     By such actions in infringing GenoTech's common law trademark, Invitrogen is improperly trading upon the enviable reputation and goodwill of GenoTech and is impairing GenoTech's valuable rights in and to its RNaseOUT mark.

39.     GenoTech has no adequate remedy at law. The conduct of Invitrogen has caused, and if not enjoined will continue to cause, irreparable damage to GenoTech's rights in and to its trademark, and to GenoTech's business, reputation, and goodwill.

## ALLEGATION OF DAMAGE COMMON TO ALL COUNTS

40.     GenoTech has suffered, is suffering, and will continue to suffer irreparable harm and damage as a result of Invitrogen's aforesaid activities. Invitrogen will, unless restrained and enjoined, continue to act in the unlawful manner complained of herein, all to the irreparable damage of GenoTech's business and reputation. GenoTech's remedy at law is not adequate to compensate it for the injuries suffered and threatened.

41.     By reason of Invitrogen's acts complained of herein, GenoTech has suffered monetary damages thus far not determined with certainty, but which will be pled with more specificity upon completion of discovery.

## DEMAND

WHEREFORE, plaintiff GenoTech prays judgment against defendant Invitrogen and demands the following:

(i) That Defendant, its officers, agents, employees, servants, privies, successors and assigns, and all persons and organizations in active participation and combination with it, be permanently enjoined and restrained from:

(a) Using the mark RNaseOUT or any confusingly similar designations;

(b) Using any false designation, description or representation regarding the source of Defendant Invitrogen's products;

(c) Further diluting and infringing GenoTech's RNaseOUT trademark and thereby damaging its goodwill and reputation;

(d) Otherwise infringing upon GenoTech's RNaseOUT trademark or competing unfairly with GenoTech.

(ii) That Defendant be required to account to GenoTech for any and all profits derived by it and to compensate GenoTech for all damages sustained by GenoTech by reason of the acts complained of herein;

(iii) That GenoTech be awarded punitive damages in an amount to be determined at trial;

(iv) That GenoTech be awarded its costs and disbursements in this action, together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1117;

(v) That GenoTech be awarded such other and further relief as this Court may deem just and proper.

Respectfully submitted,

Daniel T. Rabbitt #18652
Federal Registration 4111
RABBITT, PITZER & SNODGRASS, P.C.
Attorneys for Plaintiff
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545

OF COUNSEL:
Mark Tidman
John Hsu
ARENT FOX PLLC
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036-5339
(202) 857-6000